Brian J. Coffey (ISB #6566)
BEST BANKRUPTCY SERVICE
3350 Americana Terrace, Suite 205
Boise, Idaho  83706
Telephone:  (208) 991-8043
Facsimile:  (208) 439-7435
brian@bestbkservice.com

Attorney for Debtor(s)

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>JACQUELINE M. ANTONIE<br><br>Debtor(s). | Case No.: 09-01569-JDP<br><br>Chapter 7<br><br>**OBJECTION TO TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTION** |

The Debtor, JACQUELINE M. ANTONIE ("Ms. Antonie"), by and through her attorney of record, Brian J. Coffey, objects to the "Objection to Claim of Exemption" filed in the above-referenced case by the interim Chapter 7 trustee, Mr. Jeremy J. Gugino ("trustee").  Ms. Antonie has requested a hearing date from the court's calendar clerk and will file a Notice of Hearing separately.

## I.

## INTRODUCTION

This proceeding concerns Ms. Antonie's attempts to properly and accurately claim her exemption to property pursuant to the Bankruptcy code and Idaho law.  The property at issue is a mobile home owned by Ms. Antonie as a joint tenant with her mother.  Ms. Antonie acknowledges that her attempts to claim the exemption have been imprecise, but asserts that the latest attempt is accurate and supported by the law and should be allowed by the court.

OBJECTION TO TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTION - 1

## II.

## STATEMENT OF THE CASE

Ms. Antonie filed a *pro se* Chapter 7 Bankruptcy on June 2, 2009.  At the time of filing, Ms. Antonie co-owned two houses with her mother, Ms. Frances W. Bruckner.  One house was and is used by Ms. Antonie as her primary residence – 11807 W Stillwater Dr, Boise ("Stillwater house").  The other house, a mobile home, was and is used by Ms. Bruckner as her primary residence – 5755 Confederate Ln, Boise ("Confederate house").

Ms. Antonie listed the Stillwater house in her Schedule A and identified she was living in the house.  She listed the Confederate house on Schedule B and included the words "partial interest."  Ms. Antonie failed to list a value for the Confederate house and instead indicated she was attempting to claim the "wild card" exemption in the amount of $800.  The Confederate house was also listed on Schedule C with a value of $800 and an exemption of $800 under 11-605(10) – the so-called "wild card" exemption.

The trustee objected to Ms. Antonie's claim of exemption on July 31, 2009 (Docket # 27) on the grounds the value of the Confederate house exceeded $800 and the claimed exemption, as listed, was arguably claiming 100% of the value of the Confederate house rather than simply a total amount of $800.  The trustee commenced an adversary proceeding against Ms. Bruckner on August 18, 2009 asking for declaratory relief that 100% of the Confederate house should be part of Ms. Antonie's estate and/or that the trustee be allowed to sell the Confederate house free and clear of Ms. Bruckner's interest pursuant to 11 USC § 363(h).

On August 28, 2009, Ms. Antonie filed Amended Schedules B and C in an effort to clarify her claimed exemption in the Confederate house (Docket # 32).  The amended Schedules B and C listed Ms. Antonie's half-interest in the Confederate house at $17,500, and claimed an exemption of 100% of the total value per 11 USC § 522(b)(3)(B) as property held in joint

OBJECTION TO TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTION - 2

tenancy.   The trustee objected to the amended exemption the same day (Docket # 33) on the

grounds that Idaho Code § 11-609 precludes the application of 11 USC § 522(b)(3)(B).

Ms. Antonie failed to respond to the amended objection and what appears to be an

automatic order granting the objection was entered on October 7, 2009.   (Docket #38.)   On

January 6, 2010, counsel for Ms. Antonie appeared in this case. (Docket # 43.)   Schedules B and

C were again amended, still trying to claim an accurate, valid exemption for the Confederate

house.   (Docket # 45, 46.)   The trustee again objected on the same grounds as the most recent

objection and added that claim preclusion should bar the most recent claim of exemption.

(Docket #47.)   Ms. Bruckner filed her own Chapter 7 Bankruptcy case on January 6, 2010 (Case

No. 10-00022-JDP.)

### III.

### ARGUMENT

**A.  Idaho debtors can still claim an exemption for property held in joint tenancy under 11**

**USC § 522(b)(3)(B).**

Ms. Antonie claims that 11 USC § 522(b)(3)(B) is a proper exemption that can be

claimed despite the language of Idaho Code § 11-609.   Although Idaho is an "opt out" state, no

state can opt out of the Bankruptcy code exemptions to a greater extent than what is allowed by

the Bankruptcy code itself.   Simply put, Bankruptcy debtors can claim exemptions under §

522(b).   If a state is not an "opt out" state, debtors can claim the exemptions identified in §

522(b)(2), which actually redirect the debtor to § 522(d).   If a state is an "opt out" state, then

debtors can claim exemptions identified in § 522(b)(3).   But § 522(b)(3) has three subparts of its

own – (A), (B) and (C).   The three subparts are listed in the conjunctive as noted by the explicit

use of the word "and" between subparts (B) and (C).   The pre-BAPCPA section also used the

OBJECTION TO TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTION - 3

conjunctive "and" indicating that even prior to BAPCPA, debtors claiming exemptions under §

522(b)(3)  had access to subsection (b)(3)(B) regarding property held in joint tenancy.

As an opt out state, Idaho debtors have access to Idaho's state law exemptions via §

522(b)(3)(A).  However, because subsections (A), (B) and (C) of § 522(b) are all on par with

each other under the statute's construct, and because the three subsection are listed in the

conjunctive, if an Idaho debtor can use subsection (A), she must also be able to use subsections

(B) and (C).  No state can opt out of the Bankruptcy code more fully than allowed by the code

itself because of the doctrine of Federal preemption.   Other so-called "opt out" states allow

debtors to claim exemptions under § 522(b)(3)(B).   (See, e.g., *In re Eichorn*, 338 B.R. 793

(Bankr. S.D. Ill. 2006), *In re Malsch*, IN RE MALSCH, 400 B.R. 584, 591-592 (Bankr. N.D.

Ohio 2008) (holding that § 522(b)(3)(C) applies in Ohio despite being an opt out state); *In re*

*Dethample*, 390 B.R. 716, 725 (Bankr. Kan. 2008)(§ 522(b)(3)(C) exempts a 401(k) fund for

debtors claiming state law exemptions); *In re Hinton*, 378 B.R. 371, 381(Bankr.M.D.Fla.2007.)

("the exemptions provided in Section 522(b)(3)(A) [Florida State law, such as the Florida

Constitutional homestead exemption] are separate and distinct from those provided in Section

522(b)(3)(B) [the tenancy by the entireties exemption];"  In re Martiny, 378 B.R. 52 (Bankr.

W.D. N.Y. 2007)(New York, though an opt out state, still allows exemption under §

522(b)(3)(B));

These cases demonstrate that debtors in opt out states still are entitled as a matter of

federal Bankruptcy law to claim exemptions under § 522(b)(3)(B) and (C).  There is no dispute

that Ms. Antonie had an interest in the Confederate house as a joint tenant prior to the

commencement of her Bankruptcy case.  The exemption is authorized by the code and allowed

despite the broad language of Idaho Code § 11-609.

**B.  Claim preclusion should not apply to the instant claim of exemption.**

OBJECTION TO TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTION - 4

Ms. Antonie asserts that claim preclusion is not available as a basis for the court to disallow the claimed exemption, but that if claim preclusion is deemed to be available, the facts and circumstances of this case do not warrant its application. Claim preclusion is a matter governed by federal common law and the decision of whether to use the doctrine to bar a claim is left to the discretion of the court. *In re George*, 318 B.R. 729, 734-739 (B.A.P. 9th Cir. 2004). In this case, the trustee bears the burden of proving that claim applies and that it should be applied by the court. *Id*. at 737.

Ms. Antonie asserts that a claim of exemption in Schedule C is not a "claim" as that term is used in analyzing "claim preclusion." Schedules can be amended up to the time a case is closed and exemptions are to be liberally construed in favor of the debtor. These statements are axiomatic in Bankruptcy cases in Idaho. Sometimes debtors need a few tries to get a claim of exemption "right." An order granting a "negative-notice-objection" to an exemption based on the lack of response is not the kind of "claim" that the doctrine of "claim preclusion" is intended to address.

Even if claim preclusion is held to apply to claim of exemption, under the facts of this case it should not be applied. The value of the latest exemption is not the same as the previous exemption ($50,000 versus $70,000), and when the previous objection was filed on negative notice, Ms. Antonie was not represented by counsel. Ms. Antonie states that the exemption is claimed in good faith and is also not being asserted primarily for her own benefit, rather to protect her mother's home. Ms. Antonie requests the opportunity to at least litigate the issue and get a full hearing and a reasoned decision as to whether or not the exemption should be allowed.

DATED: February 5, 2010

By_____/s/_____
Brian J. Coffey
Attorney for Debtor(s)